UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

MARY E. BASELICE,

                Plaintiff,

      -against-

ASTRAZENECA LP,

                Defendant.

-----------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff MARY E. BASELICE ("Plaintiff" or "Baselice"), by her attorneys ALLEN & DESNOYERS LLP, for her complaint, respectfully alleges:

## NATURE OF THE ACTION

1. This is a pregnancy discrimination action against Defendant ASTRAZENECA LP ("Defendant" or "AZ"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"); New York Human Rights Law as contained in New York State Executive Law, § 296 *et seq.* ("NYSHRL"); and New York City Human Rights Law, as contained in the Administrative Code of the City of New York, § 8-107 *et seq.* ("NYCHRL").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over the state causes of action pled pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## PROCEDURAL REQUIREMENTS

5. Charges of discrimination were timely filed with the New York State Division of Human Rights ("DHR") (Case No. 10197722), which in turn filed a copy with the U.S. Equal Employment Opportunity Commission ("EEOC") (EEOC Charge 16G-2019-00465).[1]

6. Plaintiff sued within 90 days from receiving her Right to Sue letter from DHR dated April 29, 2019 and received by Plaintiff's counsel on May 3, 2019.

7. Within 10 days of commencement of this action, Plaintiff will serve a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with New York City Administrative Code Section 8-502 (c).

## PARTIES

8. Baselice was a sales representative for AZ for seven (7) years and four (4) months, providing sales coverage for the Upper East Side of Manhattan.

9. At all relevant times, Baselice resided in the City and State of New York.

10. At all relevant times, Defendant AZ, was a Delaware limited partnership and an active foreign limited partnership registered and authorized to transact business within the City and State of New York.

11. Upon information and belief, AZ employs 4 or more people within the State of New York.

12. Upon information and belief, at all relevant times, Beth Rumore ("Rumore") was a

---

[1] The New York State Division of Human Rights, in its notice of receipt dated November 9, 2018, stated the EEOC Charge Number as "16GB900465."

District Sales Manager for AZ and Baselice's direct manager, who upon information and belief is based within the City and State of New York.

13. Upon information and belief, at all relevant times, Andrew Strow ("Strow") was a Commercial Business Director for AZ and Rumore's direct manager, who upon information and belief is based within the City and State of New York.

14. Upon information and belief, at all relevant times, Karen Belknap ("Belknap") was an employment practices partner (human resources) with AZ, who upon information and belief if based in Dallas, Texas.

## FACTS

15. Baselice was hired as a sales representative for AZ on or about October 4, 2010.

16. Throughout and during-the-course of her 7 years and 4 months of employment by AZ, Baselice reported to 4 successive managers, with Rumore becoming Baselice's fourth manager on or about August 2016.

17. Throughout her tenure with AZ, Baselice would receive (more or less) monthly field coaching reports ("FCR") through which employees would submit a self-evaluation and managers would provide an employee evaluation, which consisted generally of the manager's feedback, suggestions, and performance reviews.

18. In addition, Baselice would receive an annual End of Year Review ("Annual Review") wherein the manager would provide a performance evaluation for the calendar year concluded.

19. Throughout her tenure with AZ, Baselice never received an FCR or Annual Review that rated her performance below "effective."

20. Each FCR and Annual Review requires the manager to disclose whether the employee "Follows AstraZeneca Policies."

21. Baselice never received an FCR or Annual Review where a manager alleged she did not follow AZ policies. In each-and-every FCR and Annual Review Baselice received, this question was unequivocally answered in the affirmative.

22. On January 19, 2018, Baselice informed her manager, Rumore, that she was pregnant.

23. On February 14, 2018, at 4:45 p.m., Baselice was informed by Rumore that Baselice must attend a meeting the next day (February 15th) to discuss some questions concerning her activity logs. No further information was given concerning the nature or purpose of the meeting.

24. On February 15th, Baselice duly reported to the meeting, whereat she found Rumore and Strow in attendance, and AZ human resources employee Belknap participating *via* speakerphone.

25. Despite being sandbagged with a last-minute meeting and without being provided with any advance information or agenda concerning the nature or purpose of the meeting, Baselice proceeded to truthfully answer each question that Rumore, Strow, and Belknap posed.

26. The nature of the questions posed to Baselice concerned when, precisely, Baselice entered notations of her visits to doctor offices;[2] why on two (2) occasions she was unavailable to immediately answer a phone call from Rumore; and why during the period between November to December 2017 was there seemingly less office visit activity than during the earlier periods of 2017?

27. Baselice truthfully answered that she entered all office visits as soon as practicable and precisely as she has done over the prior nearly 7.5 years she has been employed by AZ; that

---

[2] AZ provides sales representatives with an ipad loaded with a computer program called "Veeva," which is a customer relationship management tool used to store customer information and document customer sales visits.

with regard to the 2 missed phone calls, Rumore had called Baselice while Baselice was meeting in a doctor's office (and Baselice had returned the call as soon thereafter when she was available); and that during the period between November to December 2017 Baselice had experienced severe morning sickness, due to the first trimester of her pregnancy, and yet she had maintained her full schedule and not missed any doctor office sales calls as a result.

28. At the conclusion of this interrogation by Rumore, Strow, and Belknap, Baselice was told to wait outside while the others talked in her absence; then after a few minutes she was informed that her employment of almost 7.5 years was terminated, effective immediately, owing to her "misconduct associated with the job."

29. Thus, less than 1 month after informing Rumore of her pregnancy, Baselice's employment with AZ was summarily terminated.

30. Baselice was not offered any further opportunity to address any specific concerns that Rumore, Strow, and/or Belknap might have had with her job performance.

31. Given Baselice's uniformly positive performance reviews, any such concerns were clearly a pretext manufactured for the purpose of justifying AZ's intended and illegal pregnancy discrimination against Baselice.

32. Baselice was offered no reasonable accommodation for her plainly asserted pregnancy-related conditions, as required under the Americans with Disabilities Act (ADA Amendments of 2008), the NYSHRL, and the NYCHRL.

33. What is more, after nearly 7.5 years of exemplary performance reviews, Baselice was informed that the cause for her termination was "misconduct associated with the job."

34. Never during her nearly 7.5 years of employment with AZ, in the monthly FCRs or Annual Reviews, did anyone at AZ ever allege that Baselice had ever committed any "misconduct" with respect to her job.

35. The intentionally false accusation that Baselice had committed "misconduct" caused her to suffer anguish, humiliation, embarrassment, reputational harm, and emotional distress.

36. Subsequently, in its Position Paper submitted to the DHR, **AZ altered its excuse for Baselice's termination**, from "misconduct associated with the job" to "AstraZeneca based Baselice's termination **solely** on her consistent and repeated failure to follow company policy."[3] (Emphasis added.)

37. As noted *supra*, over the course of Baselice's 7 year and 4 months of employment by AZ, each-and-every FCR required the supervisor completing the review to inform AZ whether the employee "Follows AstraZeneca Policies" and in each-and-every FCR Baselice's supervisors confirmed that Baselice was indeed following AZ policies.

38. This question is answered in the affirmative on each FCR that AZ provided as an Exhibit to the DHR, *and* it is answered in the affirmative on each additional, prior and subsequent FCR, including the final FCR for Baselice dated January 22, 2018, *less than a month before she was terminated*.

39. Thus, AZ's own FCRs and Annual Reviews completely and unambiguously refute the "sole" cause AZ has given for Baselice's termination.

40. If AZ felt that Baselice was "consistent[ly] and repeated[ly]" failing to follow company policy, it would have said as much in the space conspicuously provided for this purpose on her monthly FCRs or Annual Reviews. No AZ supervisor ever did so.

41. AZ's "Final Report" on the Baselice termination, dated February 20, 2018, contains a pre-printed section at the bottom of page 3 under the heading "RECOMMENDATION" where

---

[3] Respondent AstraZeneca LP position statement, December 5, 2018, at page 6, first sentence of Section IV.

there are listed several standard categories of graduated or progressive discipline short of termination, such as: Coaching / informal guidance; Verbal Warning; 1st Written Warning; and Final Written Warning.

42. This form clearly demonstrates that AZ uses a standard progressive system of discipline in its ordinary course of business, however, Baselice was not given the benefit of these lessor disciplines and was instead summarily terminated.

43. Ms. Baselice was treated differently than other AZ employees because she was summarily terminated outside of AZ's normal progressive disciplinary policy.

44. No AZ supervisor ever stated on the FCRs that Baselice was not following company policies.

45. No AZ supervisor ever informed Baselice that her longstanding work practices for logging sales visits, which practices were known to her supervisors, and upon information and belief are standard practice among AZ sales representatives, could result in her discipline, including termination.

46. In fact, AZ's FCRs and Annual Reviews for Baselice's performance say the opposite.

47. Specifically, Baselice's FCRs and Annual Reviews expressly confirm she is working in compliance with AZ company policies and, what is more, they are filled with positive statements concerning her job performance, sales techniques, command of AZ's products, and commitment to her job.

48. Baselice's consistent ratings as "effective" or better, coupled with the positive feedback by her managers on her performance reviews (both FCRs and Annual Reviews) are hardly the feedback a manager would give to an employee who "consistent[ly] and repeated[ly]" fails to follow company policy and who is about to be terminated.

49. As case-in-point, in the final Annual Review issued to Baselice at the end of 2017, less than 2 months prior to her termination, in the manager comment, Rumore states:

> As of this writing, Mary-Beth is tracking to achieve over 100% portfolio achievement, with positive SYMBICORT® growth YTD and BEVESPI® surpassing National share. Mary-Beth is currently ranked 325 in the COE national rankings. Leadership – Mary-Beth is receptive to coaching and applies suggestions and recommendations 'on the spot.' She continues to implement those suggestions from field ride to field ride. She has been flexible with respect to changes in the territory, territory counterparts and even her product promotion bag. She has solid respiratory clinical knowledge and applies it within her sales discussions. Team Effectiveness – Mary-Beth has an energy and enthusiasm that is contagious among her peers. This truly contributes to a positive team environment, particularly when partnered with her strong collaborative spirit. She shares information with the team readily and is open to receiving and giving balanced feedback. Mary-Beth has been key in supporting PSSs who are new to the geography, leveraging her experience and relationships throughout the territory. Operational Effectiveness - ***Mary-Beth has met expectations operationally***. She has done a nice job of monitoring all the gauges associated with execution for her territory. She is on track to meet her days in territory for the year and appropriately managed her budget, sharing/borrowing funds with and from counterparts when necessary. She delivered on her call execution targets, particularly once she incorporated more of the targets in the lower portion of the territory. ***Mary-Beth has acted within the policies associated with compliance***, including attention to the rules of safe driving. Mary-Beth can be proud of 2017 as she delivered on performance, leadership and team effectiveness." (Emphasis added.)

50. Hence, AZ's own Annual Review, authored by Rumore, shows for a fact that the excuse given by AZ for the termination of Baselice, 1 month after revealing her pregnancy, is both a lie and an illegal pretext.

51. AZ's claim that Baselice was terminated "solely on her consistent and repeated failure to follow company policy" is an illegal pretext unsupported by AZ's own business records.

52. The fact of the matter is, the only thing that changed between the glowing statements of Baselice's performance contained within AZ's FCRs and Annual Reviews and Baselice's abrupt termination, was Baselice informing AZ on January 19, 2018, that she was pregnant.

53. Less than a month later, AZ abruptly and summarily terminated Baselice, under an illegal pretextual excuse, which AZ's own business records refute.

54. Consistent with a practice that is all too prevalent at large US companies,[4] Baselice, an effective employee who received glowing performance reviews, was terminated from her job at AZ for the simple reason that she was pregnant.[5]

55. The claim put forth by AZ, that Baselice was terminated "solely on her consistent and repeated failure to follow company policy," is shown, using AZ's own business documents, to be an illegal pretext constituting pregnancy discrimination under each Title VII the Civil Rights Act of 1964 (as amended by the Pregnancy Discrimination Act of 1978) ("PDA"); the New York State Human Rights Law ("NYSHRL"); and the New York City Human Rights Law ("NYCHRL").

56. As will be proven at trial, with its termination of Baselice, AZ engaged in illegal pregnancy discrimination under each the PDA of Title VII, the NYSHRL, and the NYCHRL.

## **FIRST COUNT**
(**Sex and Pregnancy Discrimination under the PDA of Title VII**)

57. Plaintiff hereby realleges each allegation in each numbered paragraph above.

58. Plaintiff was pregnant and a member of a protected class.

59. Plaintiff was satisfactorily performing the duties her position required.

---

[4] Natalie Kitroeff and Jessica Silver-Greenberg *Pregnancy Discrimination Is Rampant Inside America's Biggest Companies*, The New York Times, June 15, 2018; Natalie Kitroeff, *New York to Investigate Claims of Pregnancy Discrimination at 4 Companies*, June 27, 2018.

[5] *Compare* EEOC Enforcement Guidance on Pregnancy Discrimination and Related Issues, Number 915.003, June 25, 2015, Example 4: "Shortly after Teresa informed her supervisor of her pregnancy, he met with her to discuss alleged performance problems. Teresa had consistently received outstanding performance reviews during her eight years of employment with the company. However, the supervisor now for the first time accused Teresa of having a bad attitude and providing poor service to clients. Two weeks after Teresa began her pregnancy-related medical leave, her employer discharged her for poor performance. The employer produced no evidence of customer complaints or any other documentation of poor performance. The evidence of outstanding performance reviews preceding notice to the employer of Teresa's pregnancy, the lack of documentation of subsequent poor performance, and the timing of the discharge support a finding of unlawful pregnancy discrimination."

60. Plaintiff was discharged under circumstances raising an inference of discrimination by being terminated shortly after she announced her pregnancy.

61. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## SECOND COUNT
### (Pregnancy Discrimination in Violation of the NYSHRL & NYCHRL)

62. Plaintiff hereby realleges each allegation in each numbered paragraph above.

63. Plaintiff was pregnant and member of a protected class.

64. Plaintiff was satisfactorily performing the duties required by the position.

65. Plaintiff was discharged under circumstances raising an inference of discrimination by being terminated shortly after she announced her pregnancy.

66. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## PUNITIVE DAMAGES

67. By reason of the willful, wanton, unrepentant, reckless, and egregious conduct of Defendant as alleged herein and the Defendant's conscious disregard for the rights of Baselice, Plaintiff claims punitive damages under the NYCHRL.

(*Remainder of page intentionally blank*)

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a. Impanel a jury to hear Plaintiff's claims;

b. An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for violations of her rights under the PDA, NYSHRL, and NYCHRL, including pre- and post-judgment interest.

c. An award of damages to compensate Plaintiff for anguish, humiliation, embarrassment, and emotional distress for each cause of action, under the PDA, NYSHRL, and NYCHRL;

d. Reinstatement of employment and restoration of all benefits, bonuses, and seniority, under NYSHRL and NYCHRL;

e. An award of punitive damages to be determined at the time of trial for each cause of action, under the NYCHRL;

f. An award of reasonable attorney's fees and costs related to Plaintiff's claims under the PDA, and NYCHRL, and;

g. Such other and further relief as this Court may deem just and proper.

Dated: Albany, New York
       May 28, 2019

                                                Respectfully Submitted,
                                                ALLEN DESNOYERS LLP

                                                *s/Denise J. D'Ambrosio*

                                                Denise J. D'Ambrosio (3519)
                                                Attorneys for Plaintiff,
                                                90 State Street, Suite 1009
                                                Albany, New York 12207
                                                (518) 426-2288
                                                (914) 393-9578

**TO:    DEFENDANT**

AstraZeneca LP
Attn: Legal Department
PO Box 4500
50 Otis Street
Westborough MA, 01581

Barbara R. Rigo
Greg H. Greubel
Littler Mendelson, PC
1601 Cherry Street
Suite 1400
Philadelphia, PA 19102
Phone: (267) 402-3027
Fax:    (267)402-3131
ggreubel@littler.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Docket No.:
-----------------------------------------------------------------------------------------------------------
MARY E. BASELICE,

                                   **Plaintiff,**

       **-against-**

ASTRAZENECA LP,

                                   **Defendant.**
-----------------------------------------------------------------------------------------------------------
*COMPLAINT AND JURY DEMAND*
-----------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*


*Print name beneath DALE A. DESNOYERS, ESQ.*


                                      *Yours, etc.*

                            **Allen & Desnoyers LLP**
                          **Attorneys for Plaintiff,**
                                  90 State Street
                                    Suite 1009
                          Albany, New York 12207
                                (518) 426-2288


*To: All Counsel of Record*

*Service of the within is hereby admitted on*


*Attorneys for*