UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

MARY E. BASELICE,

                                     Plaintiff,      No. 19-cv-04931-JPO-SN

                     -against-

ASTRAZENECA LP,

                                Defendant.

------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP'S MOTION FOR SUMMARY JUDGMENT

Dated: September 17, 2020

**Morgan, Lewis & Bockius LLP**

Lincoln O. Bisbee (*Pro Hac Vice*)
John P. Guyette
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
lincoln.bisbee@morganlewis.com
john.guyette@morganlewis.com

*Attorneys for Defendant AstraZeneca Pharmaceuticals LP*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................... 4

    A.    Baselice's Employment With AstraZeneca ................................................... 4

    B.    PSS Work Expectations, Including The Expectations To Work 7.5 Hours Per Day And Enter Sales Calls As They Occur ..................................................... 5

    C.    Baselice's First Pregnancy, Parental Leave, And Accommodation ..................... 6

    D.    Rumore Coached Baselice About Time And Attendance/Work Activity Issues For Over A Year Before Baselice Announced Her Second Pregnancy ................................................................................................... 6

    E.    Baselice's "Opportunity To Respond" Meeting And Termination For Time And Attendance/Work Activity Issues ................................................ 9

    F.    Non-Pregnant PSSs Reporting To Rumore Have Also Been Terminated For Similar Reasons, And Pregnant PSSs Reporting To Rumore Have Not Been Terminated ........................................................................................ 10

    G.    Procedural History, Including The New York State Division Of Human Rights "No Probable Cause" Finding For Baselice's Identical Claims .............. 11

III.    SUMMARY JUDGMENT SHOULD BE ENTERED FOR ASTRAZENECA ............. 12

    A.    Legal Standards ........................................................................................ 12

        1.    Summary Judgment Standard ................................................... 12

        2.    Title VII Standard ................................................................... 13

    B.    Baselice Cannot Establish Or Prevail On Her Title VII Claim .......................... 15

        1.    Baselice Has Not Made A Prima Facie Case Because She Fails To Establish An Inference Of Discrimination ................................ 15

        2.    AstraZeneca Legitimately Terminated Baselice Based On Her Work Activity, Back Entry Of Calls, And Failure To Implement Prior Coaching ........................................................................ 18

        3.    Baselice Cannot Dispute AstraZeneca's Legitimate, Nondiscriminatory Reasons For Her Termination Or Provide Any Evidence Of Pretext ............................................................... 20

IV.    CONCLUSION ..................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001), *cert. denied,* 534 U.S. 993 (2001) ............................................13

*Adams-Flores v. City of New York*,
No. 18-12150, 2020 WL 996421 (S.D.N.Y. Mar. 2, 2020) ....................................................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..............................................................................................................12, 13

*Back v. Hastings On Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004) ......................................................................................................14

*Bennett v. Health Mgmt. Sys., Inc.*,
936 N.Y.S.2d 112 (N.Y. App. Div. 2011) ................................................................................19

*Cantres v. N.Y.P. Holdings, Inc.*,
No. 14-7257, 2016 WL 5867046 (E.D.N.Y. Sept. 30, 2016) ..................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................................................13

*Chapin v. Nationwide Mut. Ins. Co.*,
No. 05-0734, 2007 WL 915182 (S.D. Ohio Mar. 26, 2007) .....................................................22

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*,
444 F.3d 158 (2d Cir. 2006) ......................................................................................................12

*Croswell v. Triborough Bridge & Tunnel Auth.*,
No. 03-2990, 2007 WL 2274252 (S.D.N.Y. Aug. 7, 2007) ....................................................16

*DeMarco v. CooperVision, Inc.*,
369 F. App'x 254 (2d Cir. 2010) ...............................................................................................22

*In re DeRogatis*,
904 F.3d 174 (2d Cir. 2018) ......................................................................................................12

*DiStiso v. Cook*,
691 F.3d 226 (2d Cir. 2012) ......................................................................................................13

*EEOC v. Bloomberg L.P.*,
967 F. Supp. 2d 816 (S.D.N.Y. 2013) ..................................................................................15, 21

*Flores v. United States*,
    885 F.3d 119 (2d Cir. 2018)..................................................................................13

*Forde v. Beth Israel Med. Ctr.*,
    546 F. Supp. 2d 142 (S.D.N.Y. 2008).................................................................15

*Foster v. City of Oakland*,
    649 F. Supp. 2d 1008 (N.D. Cal. 2009) ...............................................................20

*Henry v. Daytop Vill., Inc.*,
    42 F.3d 89 (2d Cir. 1994).....................................................................................20

*Isaacs v. City of N.Y.*,
    No. 04 Civ. 5108(PAC), 2005 WL 3466051 (S.D.N.Y. Dec. 16, 2005) ...............18

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005).................................................................................13

*Jenkins v. Holder*,
    No. 11-0268, 2014 WL 1311449 (E.D.N.Y. Mar. 28, 2014).................................17

*Kaplan v. New York State Div. of Human Rights*,
    944 N.Y.S.2d 616 (N.Y. App. Div. 2012) .............................................................19

*Khan v. Abercrombie & Fitch, Inc.*,
    No. 01 Civ. 6163(WHP), 2003 WL 22149527 (S.D.N.Y. Sept. 17, 2003) ...........18

*Koester v. New York Blood Ctr.*,
    866 N.Y.S.2d 87 (N.Y. App. Div. 2008) .........................................................16, 22

*Kwong v. Bloomberg*,
    723 F.3d 160 (2d Cir. 2013).................................................................................12

*Malena v. Victoria's Secret Direct, LLC*,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012)..................................................................14

*Mario v. P & C Food Markets, Inc.*,
    313 F.3d 758 (2d Cir. 2002).................................................................................14

*Maturine v. Am. Int'l Grp., Inc.*,
    No. 04-9064, 2006 WL 3206098 (S.D.N.Y. Nov. 6, 2006)...................................20

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).............................................................................................14

*Motto v. Wal-Mart Stores E., LP*,
    563 F. App'x 160 (3d Cir. 2014) ..........................................................................17

*Muhleisen v. Wear Me Apparel LLC*,
   644 F.Supp.2d 375 (S.D.N.Y. 2009)................................................................21

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017)..........................................................................12

*Olorode v. Streamingedge, Inc.*,
   No. 11-6934, 2014 WL 1689039 (S.D.N.Y. Apr. 29, 2014) ...........................23

*Oteng-Amoako v. HSBC Bank USA*,
   No. 13-5760, 2014 WL 7476239 (S.D.N.Y. Dec. 30, 2014) ...........................20

*Ramsaran v. Booz & Co. (N.A.) Inc.*,
   No. 14-0708, 2015 WL 5008744 (S.D.N.Y. Aug. 24, 2015)............................19

*Redd v. N.Y. Div. of Parole*,
   678 F.3d 166 (2d Cir. 2012)..........................................................................12

*Rivera v. Potter*,
   No. 03-1991, 2005 WL 236490 (S.D.N.Y. Jan. 31, 2005) ..............................23

*Rodriguez v. Coca Cola Refreshments USA, Inc.*,
   No. 12-0234, 2013 WL 5230037 (E.D.N.Y. Sept. 16, 2013) ...........................23

*Sookdeo-Ruiz v. GCI Grp.*,
   No. 00-3517, 2001 WL 121942 (S.D.N.Y. Feb. 13, 2001), *aff'd*, 31 F. App'x
   17 (2d Cir.2002)............................................................................................21

*Stockbridge v. First Consulting Grp., Inc.*,
   No. 03-0426, 2004 WL 877384 (N.D. Tex. Apr. 22, 2004) ...........................2, 20

*Tomasino v. St. John's Univ.*,
   476 F. App'x 923 (2d Cir. 2012) ...............................................................16, 22

*Walton-Horton v. Hyundai of Ala.*,
   402 F. App'x 405 (11th Cir. 2010) .................................................................17

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000).............................................................................13

*White v. Pacifica Found.*,
   973 F. Supp. 2d 363 (S.D.N.Y. 2013).............................................................18

*Wolf v. Time Warner, Inc.*,
   548 F. App'x 693 (2d Cir. 2013) .....................................................................20

*Wright v. Waste Mgmt. of Maryland, Inc.*,
   77 F. Supp. 3d 218, 223 (D.D.C. 2015)..........................................................19

*Young v. United Parcel Serv., Inc.*,
   575 U.S. 206 (2015)................................................................................................13

**Statutes**

42 U.S.C. § 2000e(k) ..................................................................................................13

Family and Medical Leave Act....................................................................................22

New York City Human Rights Laws ...........................................................................11

Pregnancy Discrimination Act.....................................................................................13

**Rules**

Fed. R. Civ. P. 56.............................................................................................1, 4, 5, 12

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca" or the "Company") (incorrectly named in the Complaint as AstraZeneca LP) submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## I.   PRELIMINARY STATEMENT

Plaintiff Mary E. Baselice is a former AstraZeneca Pharmaceutical Sales Specialist ("PSS") whose primary job was making sales calls to doctors, hospitals, pharmacies and other health care providers.  AstraZeneca terminated Baselice in February 2018 because her "work activity report"—a detailed log of her sales calls over a three-month period from November 2017 to January 2018—indicated she improperly "back entered" sales calls (i.e., not logging calls as they occurred throughout the day) and routinely failed to work full days.  Over the 39 days of recorded activity from November 1, 2017 to January 30, 2018, Baselice's work activity revealed the following facts: (1) she back entered all morning sales calls on 24 of the 39 days; (2) she did not obtain a single request for pharmaceutical samples prior to 12:00 p.m. on 33 of the 39 days; (3) she did not have a single on-site sales meal prior to 12:00 p.m. on any of the 39 days; and (4) the average time she opened a customer profile was 1:05 p.m.

Baselice does not—and cannot—dispute this documented, contemporaneous evidence of her back entering calls and failing to work full hours.  Nonetheless, she alleges her termination from AstraZeneca had nothing to do with her own actions, asserting instead that her former manager, Beth Rumore, engineered her termination following Baselice's announcement that she was pregnant with her second child.  This assertion flies in the face of the undisputed record and is not supported by law.  Not only is Baselice's theory directly at odds with her undisputed work activity report, it also ignores the following undisputed facts:

- Baselice acknowledges that she received and understood AstraZeneca's PSS Work Expectations, including the requirements to engage in selling activities for 7.5 hours per day and to log all sales calls "as they occur throughout the day." She further acknowledges that if she failed to adhere to these expectations, she was not performing her job.

- Rumore provided Baselice with verbal and written coaching about the need to properly and contemporaneously record sales calls for well over a year before Baselice announced her second pregnancy.

- Other non-pregnant PSSs with time and attendance/work activity issues similar to Baselice's—including non-pregnant PSSs who reported to Rumore—were also terminated as result of those issues.

- Rumore supervised another pregnant PSS who was not terminated.

- Baselice had previously been pregnant while employed by AstraZeneca and took a maternity leave in connection with that pregnancy. Not only was she not terminated for that pregnancy—and does not allege any discrimination in connection with that pregnancy—the second-level manager who recommended her termination was also her second-level manager at the time of her first pregnancy.

- When Baselice returned from maternity leave for her first pregnancy, Rumore provided her with a requested accommodation to go home to pump breastmilk during the day—hardly the action of someone hell-bent on discriminating against pregnant individuals.

Based on these undisputed facts, and those provided in more detail below, AstraZeneca is entitled to summary judgment for at least two independent reasons.

First, Baselice is unable to make a prima facie case of pregnancy discrimination because she cannot establish that her termination "occurred under circumstances giving rise to an inference of discrimination." Specifically, she cannot establish that other non-pregnant employees received more favorable treatment than she did. Not only did AstraZeneca terminate other non-pregnant employees for time and attendance/work activity issues similar to Baselice's, other pregnant employees reporting to Rumore were *not* terminated.

Baselice speculates that AstraZeneca discriminated against her because the Company terminated her approximately one month after she informed Rumore that she was pregnant, but it

is undisputed that her observed time and attendance/work activity issues arose repeatedly *before* she informed Rumore that she was pregnant.  This is an absolute bar to her Title VII pregnancy discrimination claim.  Indeed, the New York State Division of Human Rights ("NYSDHR") highlighted this fact when finding that there was "no probable cause to believe that [AstraZeneca] engaged in . . . the unlawful discriminatory practice complained of."  Although the NYSDHR decision is not binding on this Court, it is telling that an independent administrative body investigated Baselice's conclusory assertions and found no evidence of discrimination.  The same result, on the very same facts, should apply here.

Second, even if Baselice could make a prima facie case, the undisputed facts show that the Company terminated her employment for a legitimate, nondiscriminatory (and non-pretextual) reason.  AstraZeneca terminated Baselice's employment due to her ongoing pattern of back entering sales calls and the Company's related suspicion that she was not working her full hours.  Based on a neutral analysis of Baselice's work activity—an analysis which Baselice does not dispute—the Company concluded there was reasonable evidence that she was not working during morning hours because: (1) the vast majority of her morning calls were back entered; (2) she had no difficulty entering calls she made in the afternoon hours; (3) only 6 of 39 days had samples in the morning hours; and (4) there were no on-site meals in the morning hours, which is extremely unusual.  It is blackletter law that these type of time and attendance/work activity issues provide a legitimate, nondiscriminatory reason for terminating an employee.

For all of these reasons, and those presented in more detail below, Baselice's claim of pregnancy discrimination fails, and AstraZeneca should be granted summary judgment on that claim.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Baselice's Employment With AstraZeneca.

Baselice began working for AstraZeneca as a PSS on October 4, 2010.  (Def. 56.1 ¶ 1.)
PSSs are field-based employees who make sales calls to doctors, hospitals, pharmacies and other
health care providers (collectively referred to as "health care providers").  (*Id.* ¶ 7.)  Throughout
her employment, Baselice was assigned to New York's Manhattan District, with a focus on the
Upper East Side territory.  (*Id.* ¶ 2.)

In August 2016, Rumore, the District Sales Manager for the Manhattan District, was
assigned several new PSSs, including Baselice, as part of a broad restructuring and territory
realignment.  (*Id.* ¶ 4.)  From August 2016 until her termination in February 2018, Baselice
reported directly to Rumore.  (*Id.* ¶ 5.)  Baselice was one of eight PSSs who reported directly to
Rumore.  (*Id.*)  At that time, Rumore reported to Commercial Business Director Andrew Strow.
(*Id.* ¶ 6.)

PSSs, such as Baselice, work at customer sites and are largely independent of direct
supervision.  (*Id.* ¶ 7.)  The PSS position requires gaining access to the time and attention of health
care providers, and using that access to deliver effective messaging about the safety and efficacy
of AstraZeneca's products.  (*Id.* ¶ 8.)  PSS meetings with health care providers are referred to as
"calls."  (*Id.* ¶ 9.)  During these calls, PSSs generally seek approval from health care providers to
send samples of AstraZeneca's products in an attempt to gain their business.  (*Id.* ¶ 10.)  Samples
requested or approved by health care providers are referred to as "sampling" activity, and that

---

[1] A complete statement of undisputed material facts is set forth separately pursuant to Local Rule
56.1.  *See* Defendant's Local Rule 56.1 Statement Of Undisputed Material Facts In Support Of Its
Motion For Summary Judgment (hereinafter "Def. 56.1").  AstraZeneca only summarizes those
facts herein for the Court's convenience.

activity is reflected in PSSs' work activity reports.  (*Id.*)  Also during calls, PSSs often engage in on-site meals with health care providers to bolster their relationships and sales efforts.  (*Id.* ¶ 11)

**B.**   **PSS Work Expectations, Including The Expectations To Work 7.5 Hours Per Day And Enter Sales Calls As They Occur.**

AstraZeneca's PSS Work Expectations—a written Company document—govern the expected conduct of PSSs.  (*Id.* ¶ 12.)  Baselice acknowledges she was required to follow the PSS Work Expectations during her employment with the Company.  (*Id.* ¶ 14.)  She also acknowledges she would not be performing her job if she failed to adhere to the Expectations.  (*Id.* ¶¶ 14, 18)

Pursuant to the documented Work Expectations, PSSs "are expected to complete 7.5 hours per day in territory engaged in selling activities" between 8:30 a.m. and 4:45 p.m.  (*Id.* ¶ 13)  Further, "[s]elling activities are to be performed for the purpose of maximizing client interactions and providing continuity in the delivery of sales services."  (*Id.* ¶ 15.)

AstraZeneca provides each PSS with an iPad loaded with a program called "Veeva," a customer relationship management system that PSSs use to plan and record calls, capture conversations, and view contact and account information.  (*Id.* ¶ 16.)  Under the PSS Work Expectations, PSSs are expected to log sales calls into Veeva "as they occur throughout the day" in order "to ensure an accurate recording of selling interactions exist."  (*Id.* ¶ 17)  The electronic data PSSs enter into Veeva, including calls and sampling activity, is used by District Sales Managers to gain information on the PSSs' sales activities.  (*Id.* ¶¶ 19, 20.)  For example, Veeva tracks PSSs' calls on a calendar, which District Sales Managers can access to track the call activity of their direct reports.  (*Id.*)

District Sales Managers also review the performance of their PSSs by periodically accompanying them in the field as they make sales calls.  These instances are referred to as "ride-alongs" or "walk-alongs."  (*Id.* ¶ 21)  District Sales Managers provide verbal coaching and

feedback during and after ride-alongs through Field Coaching Reports. (*Id.* ¶ 22.)  In these Reports, District Sales Managers have the opportunity to rate PSSs on a scale of one to five, with five being the highest rating, in the following categories: (1) pre-call plan; (2) engage; (3) discover; (4) close; (5) post-call assessment; and (6) compliance. (*Id.* ¶ 23)  Additionally, District Sales Managers provide a summary of the ride and comments on the PSSs' skill development. (*Id.* ¶ 24)  In the comments, District Sales Managers discuss and evaluate various performance metrics, including the PSSs' call execution (i.e., the number of calls each day). (*Id.*)

**C.     Baselice's First Pregnancy, Parental Leave, And Accommodation.**

Baselice had her first child in October 2015, while she was employed with AstraZeneca. (*Id.* ¶ 25.)  At that time, Baselice requested and was granted six months of maternity leave per Company policy. (*Id.* ¶ 26)  Baselice was under Andrew Strow's management umbrella—the same management umbrella she was under at the time of her termination—during this pregnancy. (*Id.* ¶ 27.)  Baselice neither believes nor contends that she was discriminated against in connection with this pregnancy. (*Id.* ¶ 28.)  In addition, following her return from maternity leave in April 2016, Baselice requested and received an accommodation to go home to pump breastmilk during the day. (*Id.* ¶ 29.)  Baselice acknowledges that this was not mandatory, but was nonetheless permitted by Rumore. (*Id.*)

**D.     Rumore Coached Baselice About Time And Attendance/Work Activity Issues For Over A Year Before Baselice Announced Her Second Pregnancy.**

When Rumore began supervising Baselice in August 2016, she reviewed all of her PSSs' Veeva calendars in order to learn more about the PSSs she supervised, including Baselice. (*Id.* ¶ 30.)  Upon reviewing Baselice's calendar, Rumore discovered two issues: (1) many of Baselice's first calls began well after 9 a.m.; and (2) Baselice was not completing her call entries in Veeva as they occurred. (*Id.*)  Rumore sent Baselice an email on August 16, 2016, to coach Baselice on

these issues and to detail Rumore's expectations.  (*Id.* ¶ 31.)  In the email, Rumore noted that many of Baselice's calls in Veeva were "red," meaning that the calls had been saved but not submitted. (*Id.* ¶ 34.)  Rumore explained that calls in "red" did not count toward Baselice's total number of calls per day.  (*Id.* ¶ 35.)  To avoid this issue and other potential concerns about call activity, Rumore "strongly recommend[ed]" that Baselice enter her calls as they occurred throughout the day, complete and submit calls as soon as they finished, start her work day in the 9:00 hour, and enter pharmacy calls exactly the same as physician calls.  (*Id*.)  Baselice acknowledged the issues, and she assured Rumore that she would reform her behavior.  (*Id.* ¶¶ 36, 37.)

Rumore reviewed Baselice's Veeva calendar again in April 11, 2017, after attending a ride-along with Baselice.  (*Id.* ¶ 38.)  Following the ride-along, Rumore completed a Field Coaching Report for Baselice.  (*Id.* ¶ 39.)  In the Report, Rumore noted that Baselice's "execution data quarter" was "quite low" and that she thought it was "largely due to many saved but not submitted calls."  (*Id.* ¶ 40.)  Rumore again instructed Baselice to make sure that she was closing and submitting her calls as they happened or, at minimum, at the end of the day.  (*Id.* ¶ 41.)

Although Rumore continued to coach Baselice on her repeated failure to enter calls as they occurred, Baselice's issues persisted throughout 2017.  (*Id.* ¶ 42.)  For example, after a May 3, 2017, ride-along, Rumore noted in a Field Coaching Report that Baselice's execution was "a bit baffling," and cautioned her to "save and submit all of [her] calls as they happen on the day that they happen," as they had discussed in April 2017.  (*Id*.)  Just a few weeks later, in a May 2017 review of her team members' work activity, Rumore noticed that Baselice's Veeva calendar reflected several days with calls that were "red," or saved but not submitted.  (*Id*.)  Following a ride-along in June 2017, Baselice's Veeva account "once again showed many calls that were saved and not submitted."  (*Id.* ¶ 49.)  Rumore again asked her to "please make sure that [she was]

7

opening every provider profile and creating each call, saving and submitting it" as she went.  (*Id*.)

Given this continual coaching, Rumore expected Baselice to address these issues following the June 2017 Field Coaching Report.  (*Id*. ¶ 50.)  But Baselice did not.  In January 2018, Baselice mentioned to Rumore that she might be taking off work for a half-day on Thursday, January 18, 2018.  (*Id*. ¶ 53.)  On the morning of January 19, 2018, when Rumore had not heard from Baselice about whether she had worked half of the day or the whole day on January 18, Rumore looked at Baselice's Veeva calendar.  (*Id*. ¶ 54.)  Rumore was "flabbergasted" when she observed that Baselice had not entered any calls for the entire week despite their many prior conversations about entering calls each day as they occurred throughout the day.  (*Id*.)  Rumore called Baselice, who did not answer the phone, to address her concerns about the lack of call activity for the entire week. (*Id*. ¶¶ 55,56.)

Shortly after the unsuccessful contact attempt, Rumore observed that some calls had subsequently been back entered in Baselice's Veeva calendar for that week, including on Monday, January 15, 2018, which was a Company holiday.  (*Id*. ¶ 57.)  The fact that calls were entered on Friday for the prior Monday (a holiday) further suggested to Rumore that Baselice was not entering calls as she made them throughout the day, but rather was back entering the calls (including days after they were purportedly made).  (*Id*.)  Baselice returned Rumore's call later that day and attempted to justify her delay in entering her calls.  (*Id*. ¶ 58)  During this conversation, Baselice also informed Rumore, for the first time, that she was pregnant with her second child.  (*Id*.)

Later that evening, Rumore contacted her manager, Andrew Strow, to inform him about the lack of call activity she observed in Baselice's Veeva calendar for the entire week of January 15th.  (*Id*. ¶ 59)  The following Monday morning, January 22, 2018, Rumore contacted Karen Belknap, a Senior Employment Practices Partner in AstraZeneca's Human Resources Department,

concerning Baselice's highly unusual work activity.  (*Id.* ¶ 61.)  Rumore explained her concerns regarding Baselice's call entry and work activity to Belknap.  (*Id.*)  On January 23, 2018, Belknap reviewed Baselice's Field Coaching Reports related to her work activity.  (*Id.* ¶ 62.)

Following her review, Belknap requested a work activity report covering the three-month period from November 2017 to January 2018.  (*Id.* ¶¶ 62, 63.)[2]  Belknap's review of Baselice's work activity report identified the following facts: (1) there were 24 days on which Baselice had back entered all of her morning calls; (2) there were 33 days in which there were no samples entered before noon (suggesting that Baselice had not solicited sample requests from health care providers in the morning hours); (3) there were 39 days on which there were no on-site meals entered before noon (further suggesting that Baselice was not working in the morning hours); (4) the average time that she opened a customer profile was 1:05 p.m.; and (5) Baselice had no difficulty entering calls she made in the afternoon hours.  (*Id.* ¶ 63.)  After considering the results of the report, Belknap substantiated Rumore's concerns about Baselice back entering time and not working full hours.  (*Id.* ¶ 65.)

### E.   Baselice's "Opportunity To Respond" Meeting And Termination For Time And Attendance/Work Activity Issues.

On February 9, 2018, Strow—who was already aware of Rumore's concerns regarding Baselice's work activity, prior coaching, and missing calls during the entire week of January 15th—emailed Belknap and Rumore stating, "we are at the point where we need to schedule an 'Opportunity to Respond' meeting to hear from [Baselice] about our concerns."  (*Id.* ¶ 66.)[3]  Strow

---

[2] A work activity report provides more detailed information about a PSS's "day by day" call and sampling activities including, among other things, time of first call, time of last call, time in between, and time of first and last samples.  (Def. 56.1 ¶ 45.)

[3] An "Opportunity to Respond" meeting, or "OTR," provides an employee with notice of specific concerns or allegations against him or her, and an opportunity to explain, address, and/or respond to such concerns or allegations.  OTRs also allow AstraZeneca to further investigate and address

recalled that Baselice's work activity report was "probably one of the worst" he had seen in years and "really quite an outlier," based on the lack of time between first and last call, the lack of sampling, and almost no sampling in the morning.  (*Id.* ¶ 69.)  On February 13, 2018, Rumore emailed Strow and Belknap noting several additional issues regarding Baselice's work activity, including several instances where Baselice's communications about her whereabouts did not match up with her work activity in Veeva.  (*Id.* ¶ 70.)

On February 15, 2018, Strow, Rumore, and Belknap held an Opportunity to Respond meeting with Baselice.  (*Id.* ¶ 72.)  At the meeting, Baselice admitted that she had back entered calls, but did not provide any substantive explanation addressing the issues with her call activity.  (*Id.* ¶ 73.)  Baselice also acknowledged that Rumore had previously spoken to her about entering her calls as she made them throughout the day.  (*Id.* ¶¶ 73, 75.)  Based on the work data and Baselice's admissions during the meeting, Strow recommended Baselice's termination, and both Belknap and Rumore agreed.  (*Id.* ¶¶ 76, 77.)  Strow notified Baselice of her termination.  (*Id.* ¶ 78.)  Baselice did not indicate to anyone at the time that she believed she was being terminated because she was pregnant.  (*Id.* ¶ 79.)

F.  **Non-Pregnant PSSs Reporting To Rumore Have Also Been Terminated For Similar Reasons, And Pregnant PSSs Reporting To Rumore Have Not Been Terminated.**

Baselice is far from the only employee AstraZeneca has terminated for time and attendance/work activity issues.  To maintain "consistency across [his] region," Strow has been involved in numerous terminations for these reasons.  (*Id.* ¶ 80.)  As one example, Strow recalled a similar termination for work activity concerns involving a highly regarded representative in New

---

concerns based on an employee's responses and/or explanations during the meeting.  (Def. 56.1 ¶ 68.)

Jersey.   (*Id.* ¶ 81.)   Other non-pregnant PSSs have also been terminated for time and attendance/work activity issues like Baselice's.   (*Id.* ¶¶ 81, 82.)   Rumore managed one of these terminated (and non-pregnant) PSSs, and noted similar work activity concerns to those exhibited by Baselice, including "working full days and entering and submitting your calls as they occur." (*Id*. ¶ 84.)   On the other end of the spectrum, Rumore managed other pregnant PSSs who were not terminated.   (*Id.* ¶ 85.)

G.      **Procedural History, Including The New York State Division Of Human Rights "No Probable Cause" Finding For Baselice's Identical Claims.**

In July 2018, Baselice filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR").   (*Id.* ¶ 86.)   The NYSDHR investigated Baselice's claims, and found no probable cause to support Baselice's allegations of discrimination.   (*Id.* ¶ 87.)   In particular, the NYSDHR concluded as follows:

> Significantly, the investigation revealed that [Baselice] had previously been pregnant while employed by [AstraZeneca] allowed to take maternity leave and return to work. [Baselice] was further allowed to take time off during the day to nurse her child. The investigation supports that the [Baselice's] supervisor, whom she alleges discriminated against her, is also female.  The investigation revealed that the [Baselice's] supervisor also supervised another PSS who became pregnant while employed by [AstraZeneca], and that employee's employment was not terminated . . . ***[Baselice's] belief and conclusory allegations that she was discriminated against because of her pregnancy is not sufficient to establish a nexus to [AstraZeneca's] actions***.

(*Id.* (emphasis added).)

On May 28, 2019, Baselice commenced this action.  At the initial conference on October 23, 2019, Baselice voluntarily withdrew any claims under the New York State and City Human Rights Laws because the NYSDHR's no probable cause finding barred those claims under the statutes' election-of-remedies provisions.   (*Id.* ¶¶ 88, 89.)   Baselice's sole remaining claim is asserted under Title VII.   (*Id.* ¶ 90.)

III.     **SUMMARY JUDGMENT SHOULD BE ENTERED FOR ASTRAZENECA**

A.     **Legal Standards.**

1.     **Summary Judgment Standard.**

Summary judgment is proper when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The moving party "may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotations and citation omitted); *see also In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018) (holding that when the ultimate burden of proof at trial would be on the non-moving party, the moving party "may satisfy their burden of production under Rule 56 by negating an essential element of the [non-moving party's] claim, whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [non-moving party's] own evidence" (quotations, alterations and citation omitted)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In the face of insufficient evidence, "there can be 'no genuine issue

as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[E]ven in the fact-intensive context of discrimination cases," "[i]t is now beyond cavil that summary judgment may be appropriate." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied,* 534 U.S. 993 (2001); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 40 (2d Cir. 2000) (instructing that "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

The "mere existence of a scintilla of evidence" is not enough to defeat summary judgment; "there must be evidence on which the jury could *reasonably* find for the [non-moving party]." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted) (emphasis in original); *see Anderson*, 477 U.S. at 252. "[A] Plaintiff's merely speculative or conclusory assertions" are similarly insufficient to withstand summary judgment. *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)).

## 2.  <u>Title VII Standard.</u>

Sex-based claims of discrimination under Title VII include claims of discrimination based on pregnancy. 42 U.S.C. § 2000e(k); *see also Young v. United Parcel Serv.*, *Inc.*, 575 U.S. 206, 210 (2015) ("The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."). In the absence of direct evidence of discrimination, courts apply the "three-part burden-shifting test" established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002).

First, the plaintiff must establish a "prima facie case of discrimination" by showing that "(1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected class." *Mario,* 313 F.3d at 767 (citing *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).)

Second, if the plaintiff successfully establishes her prima facie case, "the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Mario,* 313 F.3d at 767.

Third, if the defendant proffers a legitimate reason, the burden shifts back to the plaintiff to prove "that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Id*. (internal quotation marks and citation omitted). At this stage, the plaintiff "must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004). A plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment, and must show more than some metaphysical doubt as to the material facts. *See, e.g.*, *Malena v. Victoria's Secret Direct*, *LLC*, 886 F. Supp. 2d 349, 359 (S.D.N.Y. 2012).

In this case, Baselice fails to establish a prima facie case of pregnancy discrimination. And even if she could make such a case, she cannot establish that the Company's legitimate reason for her termination is pretextual.

### B.     Baselice Cannot Establish Or Prevail On Her Title VII Claim.

#### 1.     Baselice Has Not Made A Prima Facie Case Because She Fails To Establish An Inference Of Discrimination.

Baselice's prima facie case fails on the fourth element because she cannot point to any record evidence showing that her termination occurred under circumstances giving rise to an inference of pregnancy discrimination.

To establish an inference of discrimination, a plaintiff must identify other similarly situated employees not in the protected group who received more favorable treatment.  The plaintiff must "allege facts that plausibly support a finding that they were similarly situated" and that her protected characteristic was at least a motivating factor in her adverse employment action.  *Adams-Flores v. City of New York*, No. 18-12150, 2020 WL 996421, at *5 (S.D.N.Y. Mar. 2, 2020); *see also EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) ("To make out a pregnancy discrimination claim, the plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy or that she simply was treated differently because of her pregnancy.").

Here, Baselice's claim for pregnancy discrimination fails because she cannot point to a similarly situated non-pregnant comparator who had the same work activity issues and was not terminated.  To the contrary, the record evidence establishes that AstraZeneca terminated several other non-pregnant PSSs—including at least one who reported to Rumore—for time and attendance/work activity issues similar to Baselice's.  (*See supra* at 10-11.)  Furthermore, Rumore—the target of Baselice's unsupported claims of discrimination—supervised another pregnant PSS who was not terminated.  (*See supra* at 11.)  Given these undisputed facts, Baselice cannot establish a prima facie case of discrimination, and summary judgment should be entered for AstraZeneca.  *See Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008)

(granting defendant summary judgment and finding "[t]he similar circumstances surrounding the dismissal of the two employees—except that one was pregnant and the other was not—show that defendants' treatment of an employee in a protected class did not differ from their treatment of employees not in the protected class.").

Baselice relies on temporal proximately to suggest an inference of discrimination, but this assertion falls flat as it ignores the undisputed record evidence. Although Baselice was terminated on February 15, 2018, approximately one month after she informed Rumore that she was pregnant, it is undisputed that Rumore identified Baselice's work activity issues well before learning of her pregnancy. (*See supra* at 6-9.) Rumore first coached Baselice on her call entry in August 2016, then again in April, May and June of 2017. These facts preclude any inference of discrimination. *See, e.g.*, *Tomasino v. St. John's Univ.*, 476 F. App'x 923, 925 (2d Cir. 2012) (finding that "because the record is replete with undisputed evidence that Defendant imposed progressive discipline against [plaintiff] well before [her HR complaint], an inference of discrimination will not arise based solely on the proximity between her complaint and termination."); *Koester v. New York Blood Ctr.*, 866 N.Y.S.2d 87, 89 (N.Y. App. Div. 2008) (concluding that "there is no basis for finding a causal connection" where a termination "followed more than a year of . . . complaints from plaintiff's supervisors concerning her repeated unapproved absences . . . .").[4]

---

[4] Although Baselice is not claiming retaliation, the causation analysis for such claims is instructive in this case. In essence, Baselice claims the following: She notified her manager (Rumore) of her pregnancy, she was terminated approximately one month later, and therefore her termination must be the result of unlawful pregnancy discrimination. But, in the retaliation context, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions [like the non-adverse coaching actions by Rumore here] began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Croswell v. Triborough Bridge & Tunnel Auth.*, No. 03-2990, 2007 WL 2274252, at *14 (S.D.N.Y. Aug. 7, 2007) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). The same analysis holds for Baselice's baseless allegations of discrimination. Her belated assertion of an unfounded discrimination claim does not grant her immunity for her past time and attendance/work activity

In addition, the specific events leading to Baselice's termination began prior to her informing Rumore of her pregnancy.  In particular, when Rumore had not heard from Baselice about taking a potential half-day of vacation, Rumore opened Baselice's Veeva calendar and was "flabbergasted" when she observed an entire week of missing calls.  It is undisputed that this event—which led directly to HR pulling and reviewing Baselice's work activity report and then to Baselice's termination—took place on the morning of January 19, **before** Rumore ever learned of Baselice's second pregnancy.  Again, analogous cases in the retaliation context demonstrate that the Court should enter summary judgment for AstraZeneca on this record.  Specifically, summary judgment is appropriate where an employer's concerns with a plaintiff's performance pre-date an employee's communication, even if the ultimate termination occurs after the communication.  *See, e.g.*, *Jenkins v. Holder*, No. 11-0268, 2014 WL 1311449, at *13 (E.D.N.Y. Mar. 28, 2014) (granting summary judgment where employer's investigation into plaintiff's misconduct, which led to his termination, was ongoing by the time plaintiff filed complaint).[5]

Finally, Baselice's entire theory of discrimination is premised on Rumore being the alleged discriminator.  Yet it is undisputed that Strow, not Rumore, recommended Baselice's termination after independently evaluating her work activity report and based on Baselice's admissions during the Opportunity to Respond meeting.  Rumore merely agreed with the recommendation.  (*See*

issues.  Nor does her providing notice of her pregnancy to Rumore on the afternoon of January 19 absolve her from the prior coaching she received (and ignored) or from the missing call activity that Rumore observed earlier that morning (i.e., an entire week of missing calls that Baselice only began entering after Rumore called her that morning).

[5] *See also, e.g.*, *Motto v. Wal-Mart Stores E., LP*, 563 F. App'x 160, 164 (3d Cir. 2014) (upholding summary judgment for lack of causation where plaintiff only complained after employer began investigating his misconduct); *Walton-Horton v. Hyundai of Ala.*, 402 F. App'x 405, 409 (11th Cir. 2010) ("the undisputed facts show no causal connection between [plaintiff's] complaints and her discharge," where she "only complained … after [the employer] had already begun investigating her behavior.").

*supra* at 10.)   Under analogous circumstances, courts routinely enter summary judgment and dismiss plaintiffs' claims.[6]

> ### 2.   AstraZeneca Legitimately Terminated Baselice Based On Her Work Activity, Back Entry Of Calls, And Failure To Implement Prior Coaching.

Even if Baselice were able to make a prima facie case of pregnancy discrimination—which she cannot—summary judgment would still be appropriate due to AstraZeneca's legitimate, nondiscriminatory reason for her termination.

Where a plaintiff is able to establish a prima facie case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *Cantres v. N.Y.P. Holdings, Inc.*, No. 14-7257, 2016 WL 5867046, at *4 (E.D.N.Y. Sept. 30, 2016) (quoting *McDonnell Douglas*, 411 U.S. at 802; citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).   "This burden is one of production, not persuasion."   *Id.* (quoting *Reeves*, 530 U.S. at 142).   If the employer proffers such a reason, the presumption of discrimination "drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."   *Id.* (internal quotation marks and citations omitted).

---

[6] *See, e.g.*, *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 380 (S.D.N.Y. 2013) (Plaintiff could not make out a prima facie case of discrimination even "[a]ssuming *arguendo* that [alleged discriminator]'s emails and postings show[ed] discriminatory animus" because "they provide[d] no basis for denying summary judgment" as "[alleged discriminator] played no role in Plaintiff's suspension or termination"); *Isaacs v. City of N.Y.*, No. 04 Civ. 5108(PAC), 2005 WL 3466051, at *9 (S.D.N.Y. Dec. 16, 2005) (granting individual defendant summary judgment where plaintiff alleged individual defendant made racially-charged comments, but "no reasonable fact finder would conclude that [individual defendant] caused [plaintiff's] termination"); *Khan v. Abercrombie & Fitch, Inc.*, No. 01 Civ. 6163(WHP), 2003 WL 22149527, at *7 (S.D.N.Y. Sept. 17, 2003) (granting defendant summary judgment where alleged discriminatory comments made by manager did "not raise an inference of discrimination" because he "played no role in [employer]'s decision to terminate [plaintiff]").

In this case, AstraZeneca has provided "a legitimate, clear, specific and nondiscriminatory reason" for Baselice's termination—namely her well-documented and consistent inability to follow her manager's clear directions and failure to abide by the Company's guidelines for her position.  After a thorough review of Baselice's work activity—data that is undisputed by Baselice—AstraZeneca held the well-grounded belief that she was not working full days and was back entering calls in violation of the PSS Work Expectations.  (*See supra* at 9.)  Baselice admits that she back entered calls despite Rumore's coaching.  (*See supra* at 10.)  She further admits that by failing to adhere to the PSS Work Expectations, she was not doing her job.  (*See supra* at 5.)

According to Baselice's own admissions, there was a legitimate nondiscriminatory reason for her termination.  This is an end to the case.  *See, e.g.*, *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 124 (N.Y. App. Div. 2011) (finding defendant was entitled to summary judgment where it put forward evidence of nondiscriminatory motivations for terminating plaintiff, "specifically, credible evidence of numerous reports of plaintiff's unsatisfactory work performance, including, but not limited to, plaintiff's poor attendance and lack of job focus, and plaintiff's own admission that he was unable to 'master [his] job.'") (alterations in original); *Kaplan v. New York State Div. of Human Rights*, 944 N.Y.S.2d 616, 620 (N.Y. App. Div. 2012) (finding petitioner demonstrated complainant was terminated for legitimate, nondiscriminatory reason in part because "complainant's time cards support the petitioner's contention that he terminated the complainant's employment because she continued to be late after being placed on probation for lateness").[7]

---

[7] *See also, e.g.*, *Ramsaran v. Booz & Co. (N.A.) Inc.*, No. 14-0708, 2015 WL 5008744, at *7 (S.D.N.Y. Aug. 24, 2015) (holding "[p]oor performance is a legitimate, nondiscriminatory reason for terminating an employee.") (collecting cases); *Wright v. Waste Mgmt. of Maryland, Inc.*, 77 F. Supp. 3d 218, 223 (D.D.C. 2015) (finding "fail[ure] to meet the attendance and punctuality requirements of [the] job constitutes a legitimate, nondiscriminatory reason for termination")

The fact that Baselice may disagree with the conclusions AstraZeneca drew from her undisputed work activity report does not change the analysis. Indeed, "[t]he mere existence of a factual dispute concerning the correctness of [AstraZeneca's] factual findings is not sufficient to defeat summary judgment . . . ." *Oteng-Amoako v. HSBC Bank USA*, No. 13-5760, 2014 WL 7476239, at *6 (S.D.N.Y. Dec. 30, 2014) (citing *Fleming v. MaxMara USA*, 644 F. Supp. 2d 247, 266 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115, 117-18 (2d Cir. 2010) (summary order) ("[A] plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact.")).[8]

### 3.    Baselice Cannot Dispute AstraZeneca's Legitimate, Nondiscriminatory Reasons For Her Termination Or Provide Any Evidence Of Pretext.

Other than her own speculation, Baselice cannot show a single piece of evidence suggesting that AstraZeneca's stated reasons for her termination were not its true reasons, but instead were merely a pretext for discrimination towards pregnant women. To the contrary,

---

(quotation marks and citation omitted); *Stockbridge v. First Consulting Grp., Inc.*, No. 03-0426, 2004 WL 877384, at *3 (N.D. Tex. Apr. 22, 2004) (granting defendant summary judgment because "[defendant] has established a legitimate, nondiscriminatory reason for the adverse employment action: Plaintiff failed to meet [defendant]'s job performance requirements."); *Foster v. City of Oakland*, 649 F. Supp. 2d 1008, 1019 (N.D. Cal. 2009) (granting defendant summary judgment and finding it had stated a legitimate, nondiscriminatory reason for terminating plaintiff where there was "undisputed evidence that Plaintiff failed to fulfill many of the requirements for his job.").

[8] *See also, e.g.*, *Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 694-95 (2d Cir. 2013) (affirming dismissal of discrimination claim notwithstanding plaintiff's objection to employer's determination that she engaged in misconduct: "[I]n a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff . . . the factual validity of the underlying imputation against the employee is not at issue.") (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)); *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 96 (2d Cir. 1994) (noting that "[w]hether or not [the plaintiff] was actually guilty of any misconduct has no bearing on the resolution of [a] disparate treatment claim"); *Maturine v. Am. Int'l Grp., Inc.*, No. 04-9064, 2006 WL 3206098, at *6 (S.D.N.Y. Nov. 6, 2006) ("An employer's decision to fire an employee may be unwise, unreasonable, or wrong, but that is not a valid basis from which to conclude that the proffered reason is pretextual.") (collecting cases).

20

Baselice acknowledges that she was pregnant in 2015 while employed at AstraZeneca and faced no discrimination. (*See supra* at 6.) It is similarly undisputed that: (1) Strow, the person who recommended Baselice's termination, was Baselice's second level manager during Baselice's first pregnancy; (2) AstraZeneca granted Baselice six months of maternity leave for her first pregnancy; and (3) Rumore approved Baselice's requested accommodation to go home during the workday so that she could pump breastmilk after her first pregnancy. (*See supra* at 6.) These are not the actions of discriminators harboring anti-pregnancy bias, and they disprove any allegation of pretext. *See, e.g.*, *Muhleisen v. Wear Me Apparel LLC*, 644 F.Supp.2d 375, 386 (S.D.N.Y. 2009) (finding that plaintiff failed to show pretext, and noting that it was "quite difficult to reconcile" the defendant's "willingness to hire plaintiff while she was on maternity leave in January 2006 and to provide her three months' paid maternity leave a year later with plaintiff's allegation that [defendant] discriminatorily fired her because she was pregnant"); *Bloomberg L.P.*, 967 F. Supp. 2d at 855 (finding that plaintiff could not establish that alleged adverse action was pretexual because, among other reasons, defendant had recently granted her a paid leave of absence for in vitro fertilization treatments).

Despite these undisputed facts, Baselice suggests—without any evidence—that AstraZeneca (and Rumore, in particular) discriminated against her with respect to her second pregnancy. This suggestion strains credulity and is devoid of any *facts* sufficient to overcome summary judgment. Not only did Rumore previously support a pregnancy-related accommodation for Baselice, she supervised another PSS who became pregnant and was not terminated (because that PSS continued to adhere to her job responsibilities). This alone demonstrates a lack of pretext. *See, e.g.*, *Sookdeo-Ruiz v. GCI Grp.*, No. 00-3517, 2001 WL 121942, at *3 (S.D.N.Y. Feb. 13, 2001) (finding that plaintiff could not establish pregnancy discrimination claim where she "failed

to offer a shred of evidence that defendant had a discriminatory motive," and defendant offered evidence that other women went on maternity leave and suffered no negative repercussions), *aff'd*, 31 F. App'x 17 (2d Cir.2002).

Moreover, as noted earlier, AstraZeneca has terminated other non-pregnant PSSs— including at least one supervised by Rumore—for the same or substantially similar work activity issues. (*See supra* at 10-11.)  This undisputed fact provides yet another standalone reason to reject any (false) suggestion of pretext. *See, e.g.*, *DeMarco v. CooperVision, Inc.*, 369 F. App'x 254, 256 (2d Cir. 2010) (affirming district court's grant of summary judgment where defendant "presented evidence that two other non-pregnant employees who exceeded their FMLA leave were also terminated upon their return [which] suggest[ed] that [plaintiff] was treated identically to other non-pregnant employees.").

The undisputed record evidence that Baselice's work activity issues arose *before* she announced her second pregnancy further belies any inference that her pregnancy had anything to do with her termination.  *See, e.g.*, *Chapin v. Nationwide Mut. Ins. Co.*, No. 05-0734, 2007 WL 915182, at *11 (S.D. Ohio Mar. 26, 2007) (finding that defendant was entitled to summary judgment on age discrimination claim where former supervisors did not know plaintiff's age, and stated the decisions to do "performance coaching with plaintiff, to place plaintiff on a performance improvement plan, and to give her the choice between a second plan and a thirty-day period to look for a new position were motivated by her performance issues")*; see also Tomasino v. St. John's Univ.*, 476 F. App'x 923, 925 (2d Cir. 2012) (similar); *Koester*, 866 N.Y.S.2d at 89 (similar).

Finally—and fundamentally—the record is replete with evidence supporting AstraZeneca's legitimate, nondiscriminatory reason(s) for Baselice's termination.  While Baselice

may subjectively believe that she should have received a warning or some formal discipline short of termination, her subjective belief does not establish a discrimination claim. *See, e.g.*, *Olorode v. Streamingedge, Inc.*, No. 11-6934, 2014 WL 1689039, at *13 (S.D.N.Y. Apr. 29, 2014), report and recommendation adopted, No. 11-6934, 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014) (finding that "a plaintiff's mere subjective belief that he was discriminated against...does not sustain a...discrimination claim") (internal quotation marks omitted) (omissions in original)*; Rivera v. Potter,* No. 03-1991, 2005 WL 236490, at *5 (S.D.N.Y. Jan. 31, 2005) (plaintiff's subjective belief concerning defendant's motivation behind his termination, standing alone, was insufficient to survive summary judgment); *Rodriguez v. Coca Cola Refreshments USA, Inc.*, No. 12-0234, 2013 WL 5230037, at *4 (E.D.N.Y. Sept. 16, 2013) (similar).

In short, AstraZeneca had a legitimate, nondiscriminatory reason for terminating Baselice's employment, and this rationale is supported by ample (and undisputed) record evidence. Conversely, Baselice has no evidence showing that AstraZeneca's rationale was in any way a pretext for discrimination.  Accordingly, AstraZeneca is entitled to summary judgment on Baselice's Title VII claim.

## IV.   <u>CONCLUSION</u>

For all of the reasons set forth above, AstraZeneca respectfully requests that the Court grant summary judgment in its favor and dismiss Baselice's Complaint in its entirety and with prejudice.

Dated: September 17, 2020                              Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

<u>/s/ Lincoln O. Bisbee</u>
Lincoln O. Bisbee (*Pro Hac Vice*)
John P. Guyette
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
lincoln.bisbee@morganlewis.com
john.guyette@morganlewis.com

*Attorneys for Defendant AstraZeneca Pharmaceuticals LP*