UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY E. BASELICE,

                Plaintiff,

-v-

ASTRAZENECA LP,

                Defendant.

19-CV-4931 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Mary Baselice brings this case against Defendant AstraZeneca LP, her former employer, claiming that AstraZeneca violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, when it terminated her based on her pregnancy.[1] On September 17, 2020, AstraZeneca moved for summary judgment on Plaintiff's claim. For the reasons that follow, AstraZeneca's motion is granted.

**I.    Background**

      In October 2010, Plaintiff joined AstraZeneca as a Pharmaceutical Sales Specialist. (Dkt. No. 42 ¶ 1.) In this role, Plaintiff was responsible for making sales calls to healthcare providers, including doctors and pharmacies, to encourage them to sample and ultimately use AstraZeneca products. (Dkt. No. 42 ¶¶ 7–11). Plaintiff was expected to "engage[] in selling activities" for 7.5 hours each day, starting at 8:30 A.M. (Dkt. No. 42 ¶ 13.) She was further expected to log her sales calls in a program called "Veeva," AstraZeneca's customer relationship management system. (Dkt. No. 42 ¶¶ 16–18.)

---

[1] Plaintiff initially brought claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-107 *et seq.*, as well. Plaintiff voluntarily withdrew those claims on October 23, 2019. (Dkt. No. 40 at 11.)

1

From August 2016 to the date of Plaintiff's termination, Plaintiff's direct manager was Beth Rumore, a District Sales Manager. (Dkt. No. 42 ¶ 4.) Rumore, in turn, reported to Andrew Strow, a Commercial Business Director. (Dkt. No. 42 ¶ 6.)

In 2016 and 2017, Rumore awarded Plaintiff "positive" year-end reviews, assessing that Plaintiff "meets expectations" and could be "proud" of her work. (Dkt. No. 50 ¶¶ 16–17, 18–19.) Still, across these years, Rumore on occasion spoke with Plaintiff about certain problems with Plaintiff's performance. As early as August 2016, Rumore spoke with Plaintiff about her failure to enter calls in Veeva and to maintain standard work hours. (Dkt. No. 41-11.) Rumore reminded Plaintiff that unentered calls "are not completed and don't count toward [her] execution" of job duties. (*Id.*) In April 2017, Rumore asked Plaintiff to "please make sure [she is] closing AND submitting [her] calls as they happen." (Dkt. No. 41-13 at 3.) Again in May 2017, Rumore told Plaintiff that her "execution is a bit baffling" and urged that Plaintiff "keep an eye on it . . . and continue to save and submit all of [her] calls as they happen on the day that they happen as [was] discussed." (Dkt. No. 41-14 at 5.)

Given her concerns about Plaintiff's entry of calls, Rumore flagged Plaintiff's performance for AstraZeneca's Human Resources department in May 2017. (Dkt. No. 41-15 at 2.) After reviewing Plaintiff's activity report, Human Resources concluded that Rumore's concerns were substantiated. (Dkt. No. 41-15 at 4.) In June 2017, Plaintiff was provided with coaching, a form of corrective discipline. (*Id.*; Dkt. No. 50-13 at 4 ("In the workplace, discipline may be in the form of warnings that correct misconduct or coaching aimed at increasing one['s] knowledge or improving one['s] skills (i.e., performance).").)

Despite the coaching, Plaintiff did not improve her work practices. On Friday, January 19, 2018, Rumore reviewed Plaintiff's Veeva calendar and saw that no calls had been entered for

2

the entire week. (Dkt. No. 42 ¶ 54.) Rumore was "flabbergasted." (*Id*.) Rumore called Plaintiff to discuss the missing entries but was unable to get ahold of Plaintiff. (Dkt. No. 42 ¶¶ 55–56.) Shortly after the missed call, Rumore re-checked Plaintiff's Veeva calendar and noticed that Plaintiff had back-entered her activity for the week. (Dkt. No. 42 ¶ 57; Dkt. No. 41-17.) Of the back-entered calls, several were scheduled for June 15, 2018, Martin Luther King Jr. Day and a company holiday. (Dkt. No. 41-17.)

After back-entering her activity, Plaintiff returned Rumore's call. (Dkt. No. 42 ¶ 58.) In addition to attempting to justify her work practices, Plaintiff informed Rumore that she was pregnant. (*Id*.) Later that day, Rumore took time to "process[] everything" and raised Plaintiff's performance issues with Strow. (Dkt. No. 41-18; Dkt. No. 42 ¶ 59.) The following Monday, January 22, 2018, Rumore emailed Human Resources about Plaintiff's failure to enter calls contemporaneously and her back-entry of calls, including on Martin Luther King Jr. Day. (Dkt. No. 41-18.) The email did not mention Plaintiff's pregnancy. (*Id*.)

In response to Rumore's email, Human Resources reviewed Plaintiff's work activity from November 2017 to January 2018. (Dkt. No. 42 ¶¶ 62–63.) Human Resources found that, of the 39 business days in the period, Plaintiff had back-entered morning calls for 24 days, had failed to complete certain job duties before noon for 33 days, and had failed to complete other job duties before noon for all 39 days. (Dkt. No. 41-23 at 4.) Additionally, Human Resources determined that Plaintiff started her workday at 1:05 P.M., on average. (*Id*.) From this, Human Resources concluded that Plaintiff "has ignored the direction and coaching from her manager" and that Plaintiff likely "is not working during the morning hours." (*Id*.) Strow reached the same conclusion, assessing Plaintiff's record as "probably one of the worst" he had seen in years. (Dkt. No. 41-21 at 2; Dkt. No. 42 ¶ 69.)

On February 15, 2018, Plaintiff was given an opportunity to respond to these findings and conclusions, but she neither contested nor justified, to her supervisors' or to Human Resources' satisfaction, her lack of activity in the mornings or her practice of back-entering calls. (Dkt. No. 42 ¶¶ 72–74.) With the agreement of Strow, Rumore, and Human Resources, Plaintiff was terminated. (Dkt. No. 42 ¶¶ 77–78.)

On July 26, 2018, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights, alleging that she had been terminated because of her pregnancy. (Dkt. No. 42 ¶ 86.) The state agency investigated Plaintiff's claim and on February 24, 2019, determined that there was no probable cause to believe that AstraZeneca had engaged in pregnancy discrimination. (Dkt. No. 42 ¶ 87.) On May 28, 2019, Plaintiff filed this case. (Dkt. No. 1.) AstraZeneca moved for summary judgment on September 17, 2020. (Dkt. No. 39.)

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14-cv-4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-cv-5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The Court must view all evidence "in the light

most favorable to the non-moving party and draw all reasonable inferences in its favor," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted).

## III. Discussion

Title VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination on the basis of pregnancy. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1343 (2015). In the absence of "direct evidence of discrimination," Title VII claims are assessed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 149 (S.D.N.Y. 2008) (Chin, J.). In stepwise fashion, (1) the plaintiff "must first demonstrate a *prima facie* case of discrimination"; (2) the defendant "must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action"; and (3) "the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence." *Risco v. McHugh*, 868 F. Supp. 2d 75, 98–99 (S.D.N.Y. 2012).

Because the burden a plaintiff or defendant must carry at steps (1) and (2) is "minimal," *id*., courts often assume, *arguendo*, that these steps have been satisfied. *See, e.g., Forde*, 546 F. Supp. 2d at 150. The Court takes that approach here. The remaining issue, then, is "whether [Plaintiff] has presented sufficient evidence from which a reasonable jury could find that she was discriminated against because of her pregnancy." *Id*. Put differently, Plaintiff must show "that the employer's proffered reasons . . . were not the only reasons [for her termination] and that [pregnancy discrimination] was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). The record, considered as a whole, reveals that Plaintiff

5

has not made this showing. *See Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 314 (2d Cir. 1997) (explaining that courts should "view the evidence as a whole in assessing whether there was impermissible discrimination and whether the [defendant's] proffered explanation is a pretext for that discrimination").

To start, Plaintiff's evidence of discrimination is sparse. She names several non-pregnant AstraZeneca employees who supposedly back-entered calls but were not disciplined. But Plaintiff fails to show that these employees were "similarly situated" to her and that she was targeted for discipline. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Plaintiff identifies no evidence that the other employees skipped most or all of their morning work hours. *Id.* at 42 ("[T]o be similarly situated, [the comparators and the plaintiff] must . . . have engaged in conduct of comparable seriousness."). Furthermore, Plaintiff admits that AstraZeneca may not have been aware of the other employees' practice of back-entering calls. (Dkt. No. 2 at 115:13–16.)

Plaintiff's attempt to show discrimination by pointing to the temporal proximity of her supervisor's learning about her pregnancy and her termination also falters. Temporal proximity alone is "insufficient" to demonstrate that Plaintiff's termination was motivated by animus. *See Kennebrew v. New York City Housing Auth.*, No. 01-cv-1654, 2002 WL 265120, at *16 (S.D.N.Y. Feb. 26, 2002); *Forde*, 546 F. Supp. 2d at 152. The insufficiency is particularly pronounced in this case, where the events that precipitated Plaintiff's termination — Plaintiff's non-entry of calls for the entire week preceding January 19, 2018, and her erroneous back-entry of calls for a company holiday — preceded the announcement of her pregnancy. *See Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08-cv-4784, 2010 WL 423102, at *17 (S.D.N.Y. Feb. 5, 2010) ("When discipline or expressed dissatisfaction with job performance has taken place

before the plaintiff [could be discriminated against], a causal nexus does not exist between the [potential basis for discrimination] and a subsequent adverse action.").

Finally, Plaintiff suggests that the strong performance reviews she received in 2016 and 2017 undermine AstraZeneca's position that she was terminated for performance issues. The law, however, "is clear that a claimant cannot merely point to prior favorable evaluations to satisfy her burden," particularly where "the prior favorable review[s] foresaw at least some problems with the claimant's performance." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 858 (S.D.N.Y. 2013). The positive 2016 and 2017 reviews do not negate the seriousness of Plaintiff's performance issues, the extent and persistence of which Rumore discovered only after those reviews were submitted.

In contrast to Plaintiff's lackluster evidence, AstraZeneca provides compelling evidence that Plaintiff's performance was unsatisfactory and led to her termination. The companywide Work Expectations for AstraZeneca Sales Professionals specify that the workday begins at 8:30 A.M. and that calls should be "logged as they occur throughout the day." (Dkt. No. 41-10.) Plainly, Plaintiff did not abide by these Work Expectations. Indeed, her conduct deviated so far from the Work Expectations that Human Resources developed a "reasonable suspicion that she wasn't working" and that she would not be responsive to additional coaching. (Dkt. No. 6 at 120:10–25, 121:2–4.) Internal emails show that Strow reached the same conclusion.[2] (Dkt. No.

---

[2] In her opposition to the present motion, Plaintiff suggests that AstraZeneca has changed its explanation for why she was terminated and that this inconsistency raises questions about any explanation's veracity. (Dkt. No. 51 at 16.) Specifically, Plaintiff recounts that Rumore said she was terminated for back-entering calls; Strow said she was terminated for not working during morning hours; and a Human Resources representative said that she was terminated for falsifying data entries. (*Id.*) Despite Plaintiff's efforts, the Court perceives no inconsistency in these explanations. The record shows that the three listed reasons are one and the same: The back-entered calls were, in at least several instances, falsified data entries that Plaintiff used to conceal her lack of activity during morning hours.

7

41-21 at 2 ("As I reviewed all of the e-mails and data, I frankly see no evidence that [Plaintiff] has been working in the mornings for over the last six months. . . . This is particularly disappointing as [Rumore] has had several conversations in 2017 about her work activity and call documentation.").) The record suggests that other AstraZeneca employees have been terminated for "the same or substantially similar reasons" (Dkt. No. 41-4 at 18; Dkt. No. 42 ¶¶ 80–85), and Plaintiff offers no explanation for why her own failure to meet work expectations could not have been "the true reason for the employment decision," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

As if more were needed, AstraZeneca also provides undisputed evidence that it accommodates pregnant employees. Strow, who recommended Plaintiff's termination, had been her senior manager during her first pregnancy in 2015. (Dkt. No. 42 ¶¶ 25, 27.) And Rumore permitted Plaintiff to go home during work hours to pump breastmilk after Plaintiff returned from maternity leave in 2016. (Dkt. No. 42 ¶ 29.) It is "difficult to reconcile" Strow and Rumore's willingness to accommodate Plaintiff in 2015 and 2016 with Plaintiff's current stance that Strow and Rumore discriminated against her on the basis of her pregnancy in 2018. *Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 386 (S.D.N.Y. 2009). AstraZeneca's accommodation of Plaintiff's first pregnancy, as well as its accommodation of other pregnant employees in the Pharmaceutical Sales Specialist role (Dkt. No. 42 ¶ 85), "weighs strongly against finding that [AstraZeneca] was motivated by bias against pregnant women." *Chow v. Stride Rite Corp.*, No. 05-cv-2417, 2009 WL 196030, at *10 (S.D.N.Y. Jan. 27, 2009).

Viewing the record as a whole, it is apparent that Plaintiff has not presented evidence from which a reasonable jury could conclude that her termination was motivated by pregnancy-based animus. AstraZeneca is entitled to summary judgment.

**IV.     Conclusion**

For the foregoing reasons, AstraZeneca's' motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at Docket Number 39 and to close this case.

SO ORDERED.

Dated: July 8, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge